Chief District Judge David G. Estudillo

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

CANDACE BAILEY,

Defendant.

NO. CR23-5085-DGE-06

UNITED STATES' SENTENCING
MEMORANDUM

Defendant CANDACE BAILEY appears before this Court for sentencing in the above-captioned case pursuant to her guilty plea to a superseding information on November 20, 2024, to the following three charges: (1) Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); (2) Transfer of a Firearm to a Prohibited Person, in violation of 18 U.S.C. § 922(d)(1); and (3) Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). (Presentence Report (PSR) at ¶¶ 1-2; Plea Agreement at ¶ 2.) The government recommends this Court sentence Ms. Bailey to 120 months in custody followed by a three-year term of supervised release, and a $300 special assessment. The government believes this sentence is sufficient, but not greater than necessary, to fulfill the sentencing goals set forth in 18 U.S.C. § 3553(a), and therefore submits the following in support of its sentencing recommendation.

United States' Sentencing Memorandum - 1
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# I.    BACKGROUND

## A.    Offense Conduct

### 1.    Summary of Investigation

In March 2023, the Federal Bureau of Investigation, the Drug Enforcement Administration, and other federal and local law enforcement agencies conducted a series of arrests that were the culmination of a two-year investigation into drug trafficking focusing on two prison gangs, the Aryan Family and Omerta, which are predominately white prison gangs that have a presence both inside and out of prison facilities. (PSR ¶¶ 36, 39.) These gangs engage in drug trafficking as one of their primary purposes, and the investigation identified numerous individuals affiliated with the gangs who were determined to have been involved in drug trafficking and money laundering, including the distribution of multi-pound quantities of methamphetamine, fentanyl, heroin, and cocaine throughout western Washington and other states. (PSR ¶ 36.) The investigative team devoted substantial resources to identifying the organizational structure of the drug trafficking organization (DTO), including multiple rounds of court-authorized interceptions of wire and electronic communications, surveillance, the use of confidential informants, search warrants, and other investigative techniques. (PSR ¶ 37.)

Through this investigation, agents learned of three distribution cells that worked together as the Aryan Family/Omerta DTO: one led by Jesse Bailey in partnership with Thomas Carver and assisted by Candace Bailey, a second led by co-defendant Bryson Gill, and the third led by co-defendant Yehoshua Kilp. (PSR ¶ 38.) During the investigation, agents seized an estimated 830,000 fentanyl pills, 223 pounds of methamphetamine, multiple-pound quantities of fentanyl powder, cocaine, heroin, and marijuana, $338,000 of suspected drug proceeds, and 48 firearms from members of the conspiracy. (PSR ¶ 40.) Many of those firearms were seized from a storage unit rented and under the control of Candace and Jesse Bailey and in the residence they shared. (PSR ¶¶ 44, 50.) Additionally, during the coordinated arrests of the DTO members in March

United States' Sentencing Memorandum - 2
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

2023, law enforcement seized approximately 22 pounds of methamphetamine, 26 pounds of fentanyl in pill and powder form, six pounds of heroin, more than $330,000 of suspected drug proceeds, and 177 additional firearms. (PSR ¶ 40.)

**2. Candace Bailey's Role in the DTO**

Candace Bailey worked in partnership with her husband, Jesse Bailey, to lead a large-scale drug trafficking organization responsible for distributing hundreds of pounds of methamphetamine and hundreds of thousands of fentanyl pills. Her husband, Jesse Bailey, supplied and maintained a leadership role over multiple large scale drug traffickers including, but not limited to, co-defendants Ronald McComb, Gregory Beers, Eric Smith, Joseph Hempel, C'la Morales, Ronnie Griffin (Jesse Bailey's stepfather), Anna Sarnes, Anthony Escoto, Dana Hanson, and Justin Hanson, in running the DTO. (*See, e.g.* PSR ¶¶ 13, 16, 21, 23, 26, 27, 29, 30, 31, 32, 33.).

**a. Candace and Jesse Bailey jointly possessed large quantities of drugs, hundreds of thousands of dollars of drug proceeds, and an arsenal of weapons in their storage unit**

In February 2022, agents observed Jesse Bailey return to a storage unit rented by Candace Bailey immediately after they observed him drop off a drug shipment to co-conspirator Ronald McComb. (PSR ¶ 42.) Candace Bailey met him at the storage unit as they entered and began to unload items from their vehicle. *Id.* Four days later, agents served a warrant on the storage unit. (PSR ¶ 43-44.) Inside, agents located several packages of methamphetamine containing over three kilograms of "pure" actual methamphetamine, 1,252.2 grams of blue fentanyl pills (likely over 12,000 pills) that were stamped with the prescription insignia for Oxycodone, a kilo press, drug packaging materials, a digital scale, and $210,781 in drug trafficking proceeds. (PSR ¶ 43.)

In that same storage unit, the Baileys kept a significant arsenal of firearms, large quantities of ammunition, and various firearm parts, including the following (PSR ¶ 44):

- An AR-15 type rifle;
- A Sun City Machinery 20-gauge shotgun;

United States' Sentencing Memorandum - 3
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

- A Mossberg 930 12-gauge shotgun;
- A Smith & Wesson 500 revolver;
- A Heckler & Koch P30 pistol;
- A Heckler & Koch HK416 pistol;
- An Aero Precision Xl5 rifle with serial number X332532;
- An Aero Precision Xl5 rifle with serial number X384302;
- An Aero Precision Freedom rifle with serial number 14481-July4;
- An Aero Precision M4El rifle equipped with a firearm silencer;
- An Aero Precision MS rifle;
- An Aero Precision Betsy rifle;
- An Aero Precision EPC-9 rifle with serial number SF-031095 equipped with a firearm silencer;
- An Aero Precision EPC-9 rifle with serial number SF-011187;
- A Glock 21 handgun;
- A Glock-type Polymer80 handgun with no serial number;
- A Glock 19 handgun;
- A Glock 17 handgun;
- A black Polymer 80 handgun;
- A silver firearm silencer; and
- A black firearm silencer, with no serial number.



*Evidence found at Baileys' Storage Unit*

United States' Sentencing Memorandum - 4
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

The following day, unaware that the drugs had been seized by law enforcement, Candace Bailey reported the incident to the University Place Police Department as a burglary. *See* Exhibit 1 (February 2022 University Place Police Report). As documented in the report, Candace Bailey reported to the police that the $220,000 in cash was from gambling winnings despite knowing that proceeds were from drug trafficking.[1] Candace Bailey also attempted to implicate a former associate of Jesse Bailey's in the reported burglary.

### b.    Candace Bailey was a full partner with Jesse Bailey and had full knowledge of his criminal activities

Intercepted communications between Candace and Jesse Bailey show that they regularly discussed the purchase and sale of massive quantities of controlled substances. For example, in July 2022, agents intercepted a call in which Jesse told Candace Bailey about an opportunity to buy fentanyl pills for 70 cents per pill from Bryson Gill, who had 800,000 pills available. (PSR ¶ 46.) In a subsequent call, Jesse and Candace Bailey discussed how much they were going to charge their customers for each pill. *Id.* During the call, Candace Bailey encouraged Jesse Bailey to sell the pills at higher prices, telling her husband, "I already know your bitch-ass, you're gonna be like, 'I sell 'em for 90 cents now, babe." *See* Exhibit 2 – Transcript of Session 46. Jesse Bailey assured her that he would sell them for $1.10 per pill and Candace Bailey said, "You always say that." Later in the call, Jesse Bailey said that he would sell the pills to Ron (referring to co-defendant Ronnie Griffin) for the lower price of one dollar. Candace replied, "See, I told you, I already know." *Id.* Jesse Bailey then said they would earn $40,000 per shipment if they sold the pills at $1.10 (indicating that each shipment was 100,000 pills). *Id.* Candace Bailey noted her approval, "especially when your wife doesn't get sleep. It sounds a whole lot better." *Id.* Jesse Bailey reminded her: "You knew the job was dangerous." *Id.*

---

[1] She did not report the illegal silencers or the lost narcotics.

United States' Sentencing Memorandum - 5
*United States v. Candace Bailey*, CR23-5085-DGE-06

Thus, in Jesse Bailey's own words, Candace Bailey opted to go into drug trafficking with full knowledge of the potential risks.

Candace Bailey occasionally accompanied Jesse Bailey on drug transactions. For example, on August 13, 2022, in a lawfully intercepted call, Candace and Jesse Bailey discussed completing a narcotics transaction with Ronald McComb at the Ilani Casino and how Ronald McComb had a shotgun in the trunk of his car when they met. (PSR ¶ 47.).

When Candace Bailey wasn't physically present, Jesse Bailey kept her informed of his drug deals and frequently placed her on speaker phone during important conversations. For example, in a lawfully intercepted call on July 28, 2022, Candace Bailey asked Jesse Bailey whether Thomas Carver was going with him to meet "Cash" (referring to Bryson Gill). *See* Exhibit 3 – Transcript of Session 32. They then discussed whether they would put some of their cash into the bank to pay bills or if they would spend it all on the next drug shipment. *Id.* Jesse Bailey then kept Candace Bailey on speaker phone while he called co-defendant Greg Beers on his other phone to tell Beers that he was meeting with the supplier and would drop off drugs to him later that night. *Id.*

Candace and Jesse Bailey talked about their drug trafficking business in explicit detail. For example, in a lawfully intercepted call on July 28, 2022, Candace talked with Jesse Bailey about a follow up meeting with Bryson Gill in which Gill confirmed that he would sell the pills for 70 cents each and had 800,000 pills available. *See* Exhibit 4 – Transcript of Session 45. Jesse Bailey told Candace that they could net a 40-cent profit on each pill if they sell them for $1.10 each, and Candace Bailey gave her approval, saying, "Yep. Sounds perfect." *Id.* at 2. They then discussed whether to start selling "fetty powder" because Gill claimed to have "untouched" (meaning extremely pure) fentanyl powder available for purchase. *Id.* During the call, Jesse Bailey casually referred to Red Rock jail as the place where he "stabbed that fucking child molester," demonstrating the extent Candace Bailey was fully aware that Jesse Bailey was willing and capable of using

United States' Sentencing Memorandum - 6
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

extreme violence. *Id.* at 4. At the end of the call, Jesse Bailey told Candace Bailey that he was heading to Thomas Carver's place and asked her to "see what [Carver] wants to do as far as if he wants to go halves on getting these 40,000 blues and this fetty powder." *Id.* at 5. As demonstrated by this call, Candace Bailey stayed fully informed on her and Jesse Bailey's joint drug trafficking business, was knowledgeable of Jesse Bailey's violent tendencies, and was engaged in their negotiations with their partner in drug trafficking, Thomas Carver.

Candace Bailey attended important leadership meetings for the drug trafficking organization. For example, in a lawfully intercepted call on August 14, 2022, Candace and Jesse Bailey told Jesse's stepfather, co-defendant Ronnie Griffin, about a meeting they went to with other high-level drug traffickers to discuss a proposal to share the profits of their drug trafficking. (PSR ¶ 48); *See* Exhibit 5 – Transcript of Session 424. Jesse Bailey told Griffin that the co-conspirators including "Greggy" (Gregory Beers) were not selling nearly the quantity of narcotics that the Baileys were, and that it took them two to three weeks to sell ten pounds while the Baileys were able to sell 300 pounds in that time. *Id.* at 2. Candace and Jesse Bailey discussed how they didn't want to get caught in a RICO investigation because the other traffickers were keeping a ledger. *Id.* at 2-3. Candace then described how the other traffickers wanted to share the proceeds of the "dark" (meaning heroin). Candace explained that she turned down the other traffickers by saying, "Not one motherfucker in this room is moving it. Only us. So, why should I give you any of the mother fucking money that we work hard for?" *Id.* at 3. Notably, she did not describe the proceeds as Jesse's, but as a joint venture between her and her husband. Candace Bailey made it clear to co-conspirators that she was an equal partner in the venture as well. In the same call, she described Jesse Bailey and herself meeting with Gregory Beers, who told them they were "doing it all wrong." Candace Bailey said she told Beers, "It don't matter what you say." Beers responded to being dismissed by Candace Bailey by saying, "I was talking to Jess [Jesse Bailey]," and Candace Bailey

United States' Sentencing Memorandum - 7
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

said, "Look, I don't care who you think you were talking to. I'm telling you right now. We're not doing business with you no more." *Id.* at 3-4. As a full partner in the drug trafficking, Candace Bailey did not defer to Jesse Bailey and took offense to Beers discussing the business without involving her.

Even after Candace Bailey was arrested and released, she continued to maintain contact with incarcerated members of the drug trafficking organization. For example, in a recorded Department of Corrections jail call on April 16, 2023, Candace Bailey spoke with known DTO member Tyler McDonald about the indictment. *See* Exhibit 6 – Transcript of DOC call with Tyler McDonald. During the call, they discussed how various members of the Aryan Family and Omerta prison gangs had their cells searched at the same time Candace and Jesse Bailey were arrested. *Id*. Candace Bailey talked with familiarity about various Aryan Family inmates as well as various indicted co-defendants showing that she had extensive knowledge of Jesse Bailey's criminal enterprise. *Id.* They then discussed whether Jesse Bailey was going to get a clover leaf tattoo (a known symbol of the Aryan Family brotherhood). *Id.* Candace Bailey described how she got a great lawyer because he "mainly handle[s] shot callers for Aryan brotherhood and white supremacy gang" cases. *Id.* Towards the end of the call, Candace Bailey described how other inmates were impressed by her after they found out she used to work as a jail guard, but she had quit and "held her dude down," referring to her assisting him in his drug trafficking enterprise. *Id.* This call and others demonstrate that Candace Bailey was involved in Aryan Family gang politics both before and after her arrest and took pride in her loyalty to the gang's membership.

### c. Jesse and Candace Bailey provided large quantities of controlled substances to multiple drug redistributors

As detailed above, Candace Bailey had full knowledge of her husband's drug trafficking activities. Jesse Bailey regularly sold large quantities of controlled substances to multiple redistributors including Ronald McComb, Gregory Beers, Eric Smith, Joseph

United States' Sentencing Memorandum - 8
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Hempel, C'la Morales, Ronnie Griffin (Jesse Bailey's stepfather), Anthony Escoto, Anna Sarnes, Dana Hanson, and Justin Hanson.

Jesse Bailey sold large quantities of narcotics to Ronald McComb beginning no later than February 2022, when agents observed him meet with McComb to deliver controlled substances. (PSR ¶ 42.) Shortly after that meeting, agents conducted a traffic stop on McComb's vehicle. *Id.* Pursuant to a warrant, agents located 501 grams of heroin, 106 grams of fentanyl, and a Sig Sauer 9mm pistol loaded with a 30-round extended magazine. *Id.* As detailed above, agents followed Jesse Bailey from this meet to a storage unit where Candace Bailey helped him unload his truck. *Id.* As detailed further in the government's sentencing memorandum for Ronald McComb, Jesse Bailey regularly sold McComb between 20 and 50 pounds of methamphetamine and ten to forty thousand fentanyl pills at a time despite knowing that McComb was regularly armed with firearms. (Dkt. 939 at 3-4.) As detailed above, Candace Bailey accompanied Jesse Bailey on at least one drug deal with Ronald McComb and knew that he armed himself with a shotgun.

On August 11, 2022, law enforcement intercepted a call between McComb and Jesse Bailey during which McComb warned Jesse Bailey that the methamphetamine they were selling tested positive for fentanyl. Rather than stopping the drug shipments, Jesse Bailey sold McComb an additional 20 pounds of methamphetamine and 20,000 fentanyl pills. (Dkt. 939 at 3.) In the weeks that followed, McComb and Jesse Bailey discussed how to "wash" the methamphetamine to remove the yellow tint so that they could still sell it, and the strength and flavors of the new "rainbow" colored fentanyl pills. (Dkt. 939 at 4.)

Jesse Bailey regularly sold drugs to Gregory Beers—an even more well-armed drug dealer. (PSR ¶ 16.) As detailed in the calls above, Candace Bailey knew Gregory Beers and was occasionally on the phone with Jesse Bailey as he set up drug deals with Beers. As detailed more thoroughly in the Government's sentencing memorandum for

United States' Sentencing Memorandum - 9
*United States v. Candace Bailey*, CR23-5085-DGE-06

Gregory Beers, agents intercepted Jesse Bailey regularly selling Beers multi-pound quantities of methamphetamine and thousands of fentanyl pills. (Dkt. 1313 at 3-4.) Agents intercepted videos sent by Beers to a DOC inmate in which Beers displayed numerous firearms, large amounts of ammunition, and bullet-proof vests in his bedroom. *Id.* When agents attempted to arrest Beers, he threw away a pistol and evaded law enforcement by jumping over a fence. *Id.* Inside Beers' residence, law enforcement found multiple firearms, two bullet proof vests, large quantities of ammunition, 200 grams of fentanyl, and 315 grams of methamphetamine. *Id.* Law enforcement found additional firearms, ammunition and bullet proof vests in Beers' Mercedes. *Id.* When law enforcement later arrested Beers, they located two additional pistols, $7,000 in drug trafficking proceeds, and $36,000 worth of jewelry. *Id.* Gregory Beers is the individual the Baileys believed was a less effective drug dealer than themselves, and the one who Candace Bailey dismissed when he tried to explain the drug business to her, as she recounted in the intercepted call described above (pages 7-8).

Jesse Bailey was the main supplier to Eric Smith—another well-armed drug dealer. (PSR ¶ 19.) Intercepted communications revealed that Jesse Bailey regularly sold Smith multi-pound quantities of methamphetamine. For example, on August 9, 2022, Jesse Bailey told Smith that he had six pounds of methamphetamine set aside for him. (PSR ¶ 49) As detailed more thoroughly in the Government's sentencing memorandum for Smith, Smith was arrested twice with a cache of narcotics and firearms and admitted to losing a pistol and a stash of narcotics on a third occasions while being chased by law enforcement. (Dkt. 1142 at 3-4.) Intercepted communications between Jesse Bailey and Smith discuss the guns seized by police demonstrating Jesse Bailey knew that Smith armed himself with weapons while dealing the drugs Jesse and Candace Bailey provided. *Id.*

Intercepted communications show that Jesse Bailey supplied drug redistributor Joseph Hempel—another well-armed drug dealer. (PSR ¶ 23.) For example, on August

United States' Sentencing Memorandum - 10
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

22, 2022, Hempel ordered 14,000 fentanyl pills from Jesse Bailey. (Dkt. 1291 at 3.) This appears to be a weekly order, as only five days later Jesse Bailey sold Hempel an additional 25 pounds of methamphetamine and 13,000 fentanyl pills. *Id.* On November 25, 2022, Jesse Bailey sold Hempel six pounds of methamphetamine and 20,000 fentanyl pills for $22,500. *Id.* As detailed more thoroughly in the government's sentencing memorandum for Hempel, when agents arrested him, they found 109.5 grams of fentanyl pills, 1.6 kilograms of heroin, 11 drug scales, $14,799 of drug proceeds, body armor, ammunition, and multiple firearms. (Dkt. 1291 at 3.)

Jesse Bailey regularly supplied C'la Morales, a well-armed drug dealer, with multi-pound quantities of methamphetamine and tens of thousands of fentanyl pills. (PSR ¶ 26) As detailed more thoroughly in the government's sentencing memorandum for Morales, Jesse Bailey regularly sold her 10,000 fentanyl pills, 10 ounces of heroin, and two pounds of methamphetamine every few weeks. (Dkt. 1216 at 3-6.) When agents went to arrest Morales, they located 480 grams of heroin and 641 grams of fentanyl-laced pills hidden in the engine compartment of a vehicle inside her storage unit that was within arm's reach of a loaded shotgun. *Id.* at 4. In Morales' other vehicle parked outside of the storage unit, agents found an additional two loaded pistols. *Id.* at 5. Intercepted communications between Morales and Jesse Bailey indicate that Morales knew he armed himself with fully automatic weapons (the weapons that were supplied by Candace Bailey, as discussed below). *Id.* at 3. To help Jesse Bailey track down a firearm taken his storage unit, Morales sent Jesse Bailey a picture of a firearm someone was trying to sell her followed by the text, "I guess it's fully auto too." *Id.*

When Jesse Bailey became fearful that he was being tracked by law enforcement, he used his stepfather, Ronnie Griffin, to conduct drug deals on his behalf. As detailed more thoroughly in the government's sentencing memorandum for Ronnie Griffin, Jesse Bailey allowed Griffin to handle drug sales to some of Jesse Bailey's smaller drug customers in return for splitting the drug proceeds. (Dkt. 1083 at 3-4.) As noted above,

United States' Sentencing Memorandum - 11
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Candace Bailey freely discussed their drug trafficking enterprise with Ronnie Griffin and Jesse Bailey.

Jesse Bailey supplied Anna Sarnes with large quantities of controlled substances. As detailed more thoroughly in the government's sentencing memorandum for Sarnes, she placed an order with Jesse Bailey to purchase 22,500 fentanyl pills for $18,000, which Jesse Bailey had Carver conduct on his behalf. (PSR ¶ 59; Dkt. 1091 at 3-4.) Agents stopped Sarnes vehicle shortly after they observed her meet with Carver. *Id.* Inside her vehicle, law enforcement found 2,389.9 grams of fentanyl pills (roughly 24,000 pills), 262.1 grams of meth, and 15.6 grams of heroin. *Id.*

Jesse Bailey regularly supplied both Dana and Justin Hanson with multi-pound quantities of methamphetamine. As detailed in the government's sentencing memorandum for Justin Hanson, intercepted communications between Jesse Bailey and the Hansons show that they regularly purchased five pounds of methamphetamine and small quantities of heroin to transport back to the Eastern District of Washington for redistribution. (Dkt. 1282 at 3.)

> ### d.  Candace Bailey purchased large numbers of firearms and firearm parts for Jesse Bailey despite knowing he was a felon who could not possess firearms

Candace Bailey knew that Jesse Bailey was a felon who could not possess weapons. She initially met Jesse Bailey while serving as a guard at the prison where he was incarcerated on charges of Assault in the First Degree for shooting at police officers during a high-speed chase. (PSR ¶ 100, 119, 121). Despite this knowledge, Candace Bailey regularly purchased firearms and firearm parts for Jesse Bailey who would then assemble completed rifles from the parts. (PSR ¶ 49). In doing so, Candace Bailey repeatedly violated federal criminal laws prohibiting straw purchases of firearms, false statements on forms related to the purchase of firearms, and, as exemplified by her conduct related to Count 2, transferring firearms to a prohibited person.

United States' Sentencing Memorandum - 12
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

For example, on December 3, 2022, Candace Bailey purchased a tactical shotgun from a firearms dealership for Jesse Bailey while in his presence. Candace Bailey falsified a Bureau of Alcohol, Tobacco, Firearms, and Explosives Firearms Transaction Record, which is required by federal law, by stating that she was the actual transferee/buyer of the firearm, when she in fact purchased the firearm to give to Jesse Bailey. (PSR ¶ 49.) This shotgun was just one of many firearms that Jesse Bailey illegally obtained through Candace Bailey. Dozens of handguns, rifles, gun parts and components, and silencers were seized from the Baileys' storage unit in February 2022 and from their home in March 2023. (PSR ¶¶ 44, 50.)

      **e.    JESSE and Candace Bailey kept an arsenal of weapons, including a fully automatic assault rifle, in their residence which they used to store, wash, and distribute controlled substances.**

On March 22, 2023, agents executed a warrant on Jesse and Candace Bailey's residence. Inside Jesse Bailey's Dodge Ram, which he frequently drove to conduct drug deals, agents found a loaded handgun in the center console. (PSR ¶ 50.) In the garage, law enforcement found a safe containing $155,140 in United States currency, body armor, and 23 firearms including a fully automatic Aero Precision M4. *Id.* Agents found an additional loaded firearm in a safe under Jesse and Candace Bailey's bed. Neither Candace nor Jesse Bailey had a tax stamp enabling them to possess silencers or automatic weapons. (PSR ¶ 51). In other words, even without regard to the fact that as a felon Jesse Bailey was prohibited from obtaining or possessing firearms and that Candace Bailey was prohibited from providing them to him, the machinegun was unlawful for either of them to possess by virtue of it being a fully automatic rifle.

      **f.    JESSE and Candace Bailey engaged in an extensive money-laundering operation involving hundreds of thousands of dollars**

Jess and Candace Bailey utilized multiple processes to "clean" the drug money that they obtained. For example, they frequently went to casinos including the Emerald

United States' Sentencing Memorandum - 13
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Queen Casino and the Ilani Casino where they engaged in "bill stuffing"—a process in which they stuffed large amounts of cash into the slot machines and then cashed out the tickets with the design to give legitimacy to their cash and conceal its illicit nature.[2] (PSR ¶ 56). When law enforcement seized cash from Jesse and Candace Bailey's storage unit, Candace later reported this seizure as a burglary claiming that the $220,000 in cash was from gambling winnings. *See* Exhibit 1 (February 2022 University Place Police Report). Jesse and Candace Bailey also conspired to deposit cash proceeds from drug trafficking into their BECU accounts. (PSR ¶ 58-61.) In total, they deposited at least $469,378 in cash and $117,337 in peer-to-peer payments into their BECU account and an additional $75,000 into a Qualstar account they controlled. (PSR ¶ 60.) All these funds represented profits of the drug-trafficking conspiracy. They then used these funds to purchase luxury items including $17,553 for a 2019 truck, $20,000 for a 2018 AMG Mercedes Benz, and $75,000 for a 2021 Ram Truck. (PSR ¶ 71.)

**B.    Procedural History**

The grand jury indicted Candace Bailey with Conspiracy to Distribute Controlled Substances (Count 1) and Possession of a Controlled Substance with Intent to Distribute (Count 3) on March 16, 2023. (Dkt. 1.) Law enforcement arrested Candace Bailey on March 23, 2023, and she made her initial appearance that same day. (PSR ¶ 5.) On November 20, 2024, Candace Bailey pleaded guilty to a Superseding Felony Information charging Conspiracy to Distribute Controlled Substances (Count 1), Transfer of a Firearm to a Prohibited Person (Count 2), and Conspiracy to Commit Money Laundering (Count 3). (PSR ¶ 1.)

## II.    BACKGROUND ON SENTENCING

Under 18 U.S.C. § 3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2).

---

[2] Jesse and Candace Bailey were eventually barred from entering the Emerald Queen Casino based on these actions.

United States' Sentencing Memorandum - 14
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

There are four sentencing purposes set forth in Section 3553(a)(2): (1) just punishment or retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"); (2) deterrence ("to afford adequate deterrence to criminal conduct"); (3) incapacitation ("to protect the public from further crimes of the defendant"); and (4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See Rita v. United States*, 551 U.S. 338, 348 (2007) (using these four terms); *see also Gall v. United States*, 552 U.S. 38, 50 n.6 (2007).

In determining a sentence that complies with these four sentencing purposes, a sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant," the "kinds of sentences available," the Sentencing Guidelines range and Sentencing Commission's relevant policy statements, the "need to provide restitution to any victims of the offense," and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1), (3)-(7). When considering these factors, the Sentencing Guidelines range "should be the starting point and the initial benchmark." *Gall*, 552 U.S. at 49. Any deviation must be reasonable, and a "major departure" from the Guidelines range "should be supported by a more significant justification than a minor one." *Id*. at 50. Here, a downward variance is warranted considering the mitigation outlined in the presentencing report and to distinguish between her and the more active role played by her husband. But a sentence of 102 months as recommended by probation, let alone the credit for time served sentence requested by defense, is insufficient to acknowledge the severity of the offense or the active role Candace Bailey played in this drug trafficking organization. The Government believes a sentence of 120 months is sufficient, but no greater than necessary to fulfil the sentencing goals of 3553(a).

//

United States' Sentencing Memorandum - 15
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## III.    SENTENCING GUIDELINES CALCULATIONS

**A.    Offense Level**

**1.    Offense Level for Count 1**

Based on the quantity of narcotics involved, the parties stipulated to a base offense level of 38, the highest offense level available under the Drug Quantity Table of USSG § 2D1.1. (*See* Plea Agreement ¶ 10.a.) The Probation Office concurred, finding (conservatively) that the offense involved 275,810.50 kilograms of converted drug weight.[3] (PSR ¶ 68.)

The parties agreed that the following sentencing provisions apply (*see* Plea Agreement ¶ 10.b.-d.):

      a.    A two-level increase, pursuant to USSG § 2D1.1(b)(1) because a firearm was possessed in connection with the offense;

      b.    A two-level increase, pursuant to USSG § 2D1.1(b)(12), for maintaining a drug premises for the purpose of manufacturing and/or distributing controlled substances;

      c.    A two-level increase, pursuant to USSG § 2S11.1(b)(2)(B), because the defendant was convicted under 18 U.S.C. § 1956.

The Government agrees with the Probation Office that an additional two-level increase should be applied, pursuant to USSG § 2D1.1(b)(13)(B), for representing or marketing as a legitimately manufactured drug a mixture or substance containing fentanyl and acting with a willful blindness or conscious avoidance of knowledge that such mixture or substance was not the legitimately manufactured drug. (PSR ¶ 71.) Here, Jesse and Candace Bailey were responsible for selling blue pills containing fentanyl that were marked with the prescription insignia for Oxycodone. Thus, every pill they sold was nearly indistinguishable, to the common customer, from prescription Oxycodone. The

---

[3] Probation conservatively found that Jesse Bailey's converted drug weight was 486,704 kilograms and Candace Bailey appears to have been fully aware of all of Jesse Bailey's drug trafficking.

United States' Sentencing Memorandum - 16
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

only purpose for this design is to hide that these pills contain fentanyl, either to be able to sell them as "Oxycodone" or to hide their illicit nature. Thus, at best, Candace Bailey acted with a willful blindness or conscious avoidance that this substance contained fentanyl rather than being the legitimately manufactured drug, Oxycodone. Additionally, intercepted calls indicate that Jesse Bailey knew that the methamphetamine he was selling contained fentanyl. Subsequent calls indicate that he actively worked on washing this product so that he could continue to sell it to his customers without their knowledge it contained fentanyl. These calls indicate that he washed the methamphetamine in his residence where Candace Bailey would have unquestionably known what he was doing. Thus, this Court should apply this two-level increase.

Lastly, the Government moves for a three-level decrease based on the defendant's acceptance of responsibility, pursuant to USSG § 3E1.1. (PSR ¶¶ 80-81.)

Thus, Defendant's Total Offense Level is 43. (PSR ¶ 82.)

**B.      Defendant's Criminal History**

Candace Bailey has no prior criminal convictions. Thus, she falls under criminal history category I. (PSR ¶ 85)

**C.      Guidelines Range**

Based on a total offense level of 43 and criminal history category I, the guidelines sentencing range is life imprisonment. (PSR ¶ 127). But since the statutorily authorized maximum sentence is less than the guideline range, the guideline term is reduced to the maximum consecutive sentence available for the offense 660 months (240 months on Count 1, 180 months on Count 2, and 240 months on Count 3). (PSR ¶ 127.) *See* USSG § 5G1.2(b).

**IV.     FACTORS RELATED TO SENTENCING RECOMMENDATION**

The United States respectfully recommends this Court sentence Candace Bailey to 120 months in custody followed by a three-year term of supervised release and a $300 special assessment. The United States believes this sentence sufficient, but no greater

United States' Sentencing Memorandum - 17
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

than necessary in light of "the nature and circumstances of the offense," and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and "to protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), and (a)(2)(C). A review of pertinent Section 3553(a) sentencing factors, below, supports the jointly recommended sentence.

**A.    Nature and Circumstances, and Seriousness of the Offense**

Candace Bailey was a full partner with Jesse Bailey in the drug trafficking enterprise and served in an active role where she provided guidance on pricing, partnerships, methods, and individual shipments. She is fully responsible for Jesse Bailey supplying at least ten-large scale drug redistributors, many of whom they knew to be armed with firearms. Collectively, their drug trafficking organization distributed hundreds of pounds of methamphetamine, pounds of heroin, and hundreds of thousands of fentanyl pills monthly for well over a year. More gravely, she helped arm this drug trafficking conspiracy by regularly buying her husband firearms and firearm parts that she knew he was assembling into rifles including a fully automatic machine gun. She provided these weapons to Jesse Bailey despite knowing that that he was violent (she met him in prison while he was serving a 15-year sentence for Assault in the First Degree and he openly discussed stabbing someone he suspected of being a child molester). In addition to the firearms, Jesse and Candace Bailey stored body armor, silencers, and large quantities of ammunition both in their residence and their storage unit.

The damage that Candace Bailey's crimes have caused our community is immeasurable. As this Court is all too aware, these drugs have a devastating impact on the community. Users of these drugs frequently resort to stealing—from family members, friends, and complete strangers—to feed their addictions. No doubt, drug users are responsible for a large percentage of these crimes, as well as the violent crimes, in our communities. The fentanyl pills they provided included rainbow fentanyl pills that came

United States' Sentencing Memorandum - 18
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

in different flavors including lemon and lime that can only be described as marketing for younger users.

More importantly, these drugs destroy the lives of those who use them, and the lives of the users' families and friends. Those families and friends are prisoners, forced to watch the toll these drugs take on their sons, daughters, parents, or friends. While the number of people directly and indirectly impacted by the drugs Jesse and Candace Bailey and their co-conspirators trafficked is difficult to quantify, it is undeniably extensive based on the sheer quantity of drugs distributed by this drug trafficking organization. These drugs undoubtedly fell into the hands of long-time addicts, first-time users, and everyone in between.

Especially with respect to first-time users of fentanyl, who are sometimes unaware that that the counterfeit oxycodone pills they are taking contain fentanyl, their lives are put at risk with every use of these dangerous substances. This has resulted in an unprecedented epidemic of overdose deaths in the United States, and an unrelenting increase in overdose deaths in Washington state. To illustrate, the National Center for Health Statistics, Centers for Disease Control, estimates that, despite a decrease in overdose deaths nationwide, Washington had an increase in overdose deaths of over 27% in the year ending December 2023. *See* Ken Alltucker, *Drug overdoses spiked in these states. But they have dropped elsewhere in the country.*, USA Today, May 15, 2024, available at: https://www.usatoday.com/story/news/health/2024/05/15/drug-overdose-deaths-2023-data/73670888007/ (last accessed June 24, 2025). *See also* Alex Fitzpatrick, *Fatal drug overdoses are falling — but not everywhere*, Axios, February 20, 2025, available at: https://www.axios.com/2025/02/20/drug-overdoses-death-rate-map (last accessed June 24, 2025). According to the later article, the age-adjusted drug overdose death rate was 33.7 per 100,000 people in 2022 and 42.4 in 2023 in the State of Washington—an increase of 25.8%.

//

United States' Sentencing Memorandum - 19
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

As this Court is aware, the scale of the problem is massive. The Washington State Department of Health (DOH) tracks opioid and drug use data which demonstrates a crisis in number of drug-related overdose deaths occurring statewide over the past several years, as illustrated by the graphic published by the DOH on their website, below:



Washington State Department of Health, *Opioid and Drug Use Data Dashboard*, available at: https://doh.wa.gov/data-and-statistical-reports/washington-tracking-network-wtn/opioids/overdose-dashboard (last accessed June 24, 2025). This data shows the number of drug overdose deaths occurring annually in the state more than doubled from 2019 to 2023.

But apart from the consequences from the use of drugs on addicts, drug trafficking has a secondary effect on communities: the violence associated with the illicit drug trade. Firearms are the main driver of this drug-related violence, and Candace Bailey armed her husband so he could be armed as he drove to make deliveries of drugs, and was responsible for their accumulation of caches of handguns and rifles they kept first in their storage unit and later at their residence. The danger presented by Candace Bailey's conduct is multiplied by her willingness to arm the DTO.

The severity of Candace Bailey's crime and the potential impact it has had on the community demonstrates that the 102 months recommended by probation, let alone the

United States' Sentencing Memorandum - 20
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

credit for time served sentence requested by defense, is insufficient to fully recognize the severity of her crime. The defendant's recommendation would not come close to reflecting the seriousness of the offense, does the opposite of promoting respect for the law, and is grossly insufficient to provide just punishment for the serious, multi-faceted and extended criminal conduct in which Candace Bailey knowingly engaged. Even given her lack of criminal history, a significant sentence is necessary to accomplish the goal of deterrence. Despite this being her first criminal conviction, Candace Bailey was no stranger to the world of criminal activity. As a prison guard, she was no doubt trained and experienced in dealing with individuals who lived outside the boundaries of legal conduct. Yet when she left that position she decisively chose a life of drug dealing and criminality to support herself and her family, associating herself with gang members and felons, and believing herself to be better at that life than many of them.

The government believes that a 120- month sentence is sufficient, but no greater than necessary to acknowledge the devastating impact their drugs have had on the community while also sentencing her in line with other defendants.

**B.      Similarly Situated Defendants**

This Court has already sentenced multiple defendants in this criminal conspiracy and numerous other defendants have pleaded guilty with either joint sentencing recommendations or caps on the government's sentencing recommendation. For ease of comparison, the government has created a chart outlining the pleas that have been accepted and the relative sentences imposed. *See* Exhibit 7 (Sentencing Chart). Candace Bailey does not have an immediate comparison to other co-defendants in this case because she both served in somewhat of a leadership role as Jesse Bailey's partner, but also often distanced herself from transporting or selling the controlled substances.

Regardless, Candace Bailey is far more culpable than Sara Thompson (sentenced to 84 months) who largely only carried out the orders from Yashi Kilp and had no decision-making authority in the organization. Similarly, she is more culpable than Isaac

United States' Sentencing Memorandum - 21
*United States v. Candace Bailey*, CR23-5085-DGE-06

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Cervantes (sentenced to 108 months) who had no prior criminal history and only acted upon the strict orders of Bryson Gill. Neither of those individuals had significant agency within the drug trafficking organization and were far further down in the organization's structure. Thus, any sentence similar to or lower than Cervantes or Thompson would create unwarranted sentencing disparities. A sentence of 120 months would place Candace Bailey's punishment above the lower-level members of the conspiracy who had little discretion, but below the higher-level drug redistributors who sat at the top of the DTO and conducted its business while armed with firearms. Thus, a sentence of 120 months appropriately avoids unwarranted sentencing disparities.

## V.    CONCLUSION

For all the reasons set forth above, the government respectfully recommends the Court sentence Candace Bailey to 120 months' imprisonment followed by a three-year term of supervised release, and a $300 special assessment.

DATED June 25, 2025.

Respectfully submitted,

TEAL LUTHY MILLER
Acting United States Attorney

*/s/ Zachary W. Dillon*
MAX B. SHINER
ZACHARY W. DILLON
Assistant United States Attorneys
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
Phone: 253-428-3807
Fax: 253-428-3826
Email: Zachary.Dillon@usdoj.gov

United States' Sentencing Memorandum - 22
*United States v. Candace Bailey*, CR23-5085-DGE-06